

FILED

Feb 24 2017, 9:36 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark Small
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael Dowdell,<br>*Appellant-Petitioner,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Respondent.* | February 24, 2017<br><br>Court of Appeals Case No.<br>49A02-1604-PC-878<br><br>Appeal from the Marion Superior<br>Court<br><br>The Honorable Kurt M. Eisgruber,<br>Judge<br><br>The Honorable Steven J. Rubick,<br>Magistrate<br><br>Trial Court Cause No.<br>49G01-9508-PC-120351 |

**Najam, Judge.**

# Statement of the Case

Michael Dowdell appeals the post-conviction court's denial of his successive petition for post-conviction relief. Dowdell raises one issue for our review, which we restate as whether the post-conviction court erred when it concluded, on the merits of Dowdell's petition, that Dowdell did not receive ineffective assistance from his appellate counsel. We affirm.

# Facts and Procedural History

The facts underlying Dowdell's convictions and the procedural history immediately following those convictions were stated by the Indiana Supreme Court as follows:

> Kenneth Pack and Kimberly Renee Saxton had their first date on the evening of August 22, 1995. The two ate take-out food at Pack's house and then watched television. Pack's roommate, Lawrence Moore, was also at home but remained in his bedroom. At about 8:30 p.m., Pack heard a knock at the door and answered it. He saw Dowdell, whom he had known for nearly twenty years, on the front step. When Pack opened the door, another man stepped out from behind Dowdell and put a gun to Pack's head. The armed stranger led Pack to the kitchen where he then ordered him to call for whomever was in the house. Pack complied, and Moore and Saxton came to the kitchen. The stranger ordered Saxton to tie up Pack and Moore, which she did. The stranger then held the three at gunpoint while Dowdell ransacked the house. Dowdell later returned to the kitchen and spoke to the stranger who responded by asking where the money was and firing a bullet into the ceiling. Pack told the robbers that he had $200 tucked under a sofa cushion. Dowdell returned and, according to Pack's testimony, "whispered something to [the stranger] and then the [stranger]

just starting shooting." Saxton and Moore both died of the gunshot wounds. Pack survived.

> Dowdell was arrested and charged with two counts of felony murder, one count of attempted murder, one count of robbery, and three counts of criminal confinement. The State's primary witness at trial was Pack. In addition, the State called Anthony Ross who testified that, while he was waiting in a holding cell to appear in court in August of 1995, Dowdell told him that he and another man had gone to Pack's house and shot the people inside because Dowdell and a friend "had got beat out [of] some drugs." A jury found Dowdell guilty on all counts and the trial court sentenced him to an aggregate term of 160 years imprisonment. Dowdell initiated a direct appeal of his convictions but then sought leave to pursue postconviction relief in the trial court. Leave was granted, and Dowdell filed a petition for postconviction relief in the trial court, which was denied. The direct appeal was then reinstated and consolidated with the appeal from the denial of postconviction relief.

*Dowdell v. State*, 720 N.E.2d 1146, 1149 (Ind. 1999) ("*Dowdell I*").

[3]     On the direct appeal issues raised in *Dowdell I*, the Indiana Supreme Court held that the trial court abused its discretion in sentencing Dowdell because the court had "fail[ed] to find and balance" the "significant mitigating circumstance" of Dowdell's lack of criminal history. *Id.* at 1154. As such, our supreme court remanded to the trial court for resentencing. On the post-conviction issues, our supreme court held that Dowdell did not receive constitutionally effective assistance from his trial counsel. *Id.* at 1151. The court then remanded for the post-conviction court to consider whether that deficient performance resulted in prejudice to Dowdell. *Id.* at 1152.

[4]     Thereafter, the trial court resentenced Dowdell. In particular, the trial court sentenced him as follows:

> The Court resentenced Defendant to a total executed term of 100 years, with [below-presumptive[1]] terms of 50 years on each of the murders, and [the presumptive term[2] of] 30 years on the attempted murders. The [C]ourt also entered [presumptive[3]] sentences of 10 years on each of the robbery and criminal confinement counts. The Court then determined that the murder convictions would run consecutive to each other and the other sentences would run concurrently with the murders. As mitigating factors[,] the [C]ourt found the defendant's limited criminal history, the fact that he was not the actual shooter, that he was helping to raise a child[,] and that incarceration would be a hardship on the child. As aggravating circumstances, the [C]ourt found that the defendant had a relationship with one of the victims which he exploited to gain access, the victims recommended an aggravated sentence, and the severe injuries suffered by the victims.

Appellant's App. Vol. 2 at 34-35. The court then found that those aggravating and mitigating circumstances "balance[d]." *Dowdell v. State*, No. 49A05-0008-CR-353, R. at 83 (Ind. Ct. App. Aug. 24, 2000). Nonetheless, the trial court imposed consecutive sentences "based upon the violent nature of those

---

[1]  *See* Ind. Code § 35-50-2-3(a) (1995).

[2]  *See id.* §§ 35-42-5-1, -50-2-4.

[3]  *See id.* § 35-50-2-5.

convictions." *Id.* at 84.[4] As the post-conviction court in the instant matter found, "[t]he [trial c]ourt [in resentencing] . . . determined that the consecutive sentences were justified by the *separate, additional aggravating circumstance regarding the violent nature of the crimes.*" Appellant's App. Vol. 2 at 35 (emphasis added).

[5] Dowdell appealed his revised sentence. In relevant part, he argued that the trial court abused its discretion when it ordered his sentences for murder to run consecutively based on "the violent nature of the crimes" because "murder is always violent." *Dowdell v. State*, No. 49A05-0008-CR-353, slip op. at 9 (Ind. Ct. App. Apr. 26, 2001) ("*Dowdell II*"). We rejected that argument and affirmed his revised sentence. *Id.*

[6] In 2005, Dowdell filed a motion to correct erroneous sentence with the trial court, which the court denied. On appeal from that judgment, Dowdell argued that "the trial court could not impose consecutive sentences after imposing reduced and presumptive sentences on the individual convictions." *Dowdell v. State*, No. 49A02-0511-PC-1101, slip op. at 5 (Ind. Ct. App. Aug. 9, 2006) ("*Dowdell III*"). But we did not consider the merits of Dowdell's argument on appeal. Instead, we held that Dowdell's alleged error was not obvious on the face of the judgment, and, therefore, we affirmed the trial court's denial of his motion to correct erroneous sentence. *Id.* at 10 (citing *Jackson v. State*, 806

---

[4] In his Reply Brief, Dowdell suggests that we should ignore the trial court's statements during the resentencing hearing because those statements are not reproduced in full in the court's chronological case summary. We reject that argument.

N.E.2d 773, 774 (Ind. 2004)). We also noted that Dowdell had not perfected a successive petition for post-conviction relief and, accordingly, that the trial court "had no jurisdiction" to entertain his motion to correct error as such a petition. *Id.*

[7] In February of 2013, we granted Dowdell's motion for leave to file a successive petition for post-conviction relief. In his successive petition, Dowdell argued, in relevant part, that his appellate counsel in *Dowdell II* had rendered ineffective assistance of counsel when she did not rely on *Marcum v. State*, 725 N.E.2d 852 (Ind. 2000), and argue, as Dowdell had attempted to do in *Dowdell III*, that the trial court erred when it ordered consecutive sentences after having imposed presumptive or below-presumptive sentences on each of Dowdell's convictions. Following an evidentiary hearing, the post-conviction court found that Dowdell did not receive ineffective assistance from his appellate counsel in *Dowdell II*.[5] This appeal ensued.

## Discussion and Decision

[8] Dowdell appeals the post-conviction court's denial of his successive petition for post-conviction relief. Our standard of review is clear:

> The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004)

---

[5] The post-conviction court also found that Dowdell's argument was precluded by *res judicata*, but we need not consider that alternative ground for the court's denial of the successive petition.

(citations omitted). When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind. 1993). Further, the post-conviction court in this case made findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). Although we do not defer to the post-conviction court's legal conclusions, "[a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (internal quotation omitted).

*Campbell v. State*, 19 N.E.3d 271, 273-74 (Ind. 2014) (alteration original to *Campbell*).

[9] In particular, Dowdell argues that he received ineffective assistance from his appellate counsel in *Dowdell II*:

> When evaluating an ineffective assistance of counsel claim, we apply the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *See Helton v. State*, 907 N.E.2d 1020, 1023 (Ind. 2009). To satisfy the first prong, "the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002) (citing *Strickland*, 466 U.S. at 687-88, 104 S. Ct. 2052). To satisfy the second prong, "the defendant must show prejudice: a reasonable probability (i.e. a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the

proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694, 104 S. Ct. 2052).

*Id.* at 274.

[10] Here, in resentencing Dowdell following our supreme court's decision in *Dowdell I*, the trial court imposed presumptive or below-presumptive sentences for each conviction and expressly stated that the aggravators and mitigators relied on in reaching those particular sentences were in balance. However, the court then identified a freestanding, separate aggravator that it had not yet considered, namely, the violent nature in which the murders had been committed. Relying on that freestanding aggravator, the trial court ordered Dowdell's two sentences for murder to be served consecutively.

[11] Dowdell argues that the trial court erred when it ordered him to serve consecutive sentences after it had imposed presumptive or below-presumptive sentences on each count. According to Dowdell, in *Marcum* our supreme court expressly concluded that consecutive sentences in such circumstances are prohibited. Thus, Dowdell asserts that his appellate counsel in *Dowdell II* rendered ineffective assistance when she did not rely on *Marcum* to argue that Dowdell's consecutive sentences should be reversed.

[12] In *Marcum*, the trial court found the aggravators and mitigators to balance but nonetheless imposed consecutive sentences. The trial court in *Marcum* identified no other aggravators other than those found to be in balance with the mitigators. Our supreme court held that, "because the trial court found the

aggravating and mitigating circumstances to be in balance, there is no basis on which to impose consecutive sentences." 725 N.E.2d at 864. Thus, in *Marcum* our supreme court remanded "with direction to impose concurrent sentences on all counts." *Id.*

[13] But Dowdell's sentence is materially different from that considered by our supreme court in *Marcum*. Rather, Dowdell's sentence is like that considered by this court in *Gleaves v. State*, 859 N.E.2d 766, 770-71 (Ind. Ct. App. 2007). In *Gleaves*, we distinguished *Marcum* and held:

> This court has consistently interpreted *Marcum* and its progeny to require that[,] in order to impose consecutive sentences, the trial court must find *both* at least one aggravating circumstance[] and that the aggravators outweigh the mitigators. Here, the trial court's sentencing statement clearly met the first criterion . . . but Gleaves claims it did not meet the second . . . .
>
> When pronouncing sentence, the trial court identified Gleaves's criminal history as an aggravator[] but found it to be of "middle or medium weight." Transcript at 542. The court identified two mitigators, Gleaves's young age and his remorse. The court found the aggravators and mitigators to be "very equal in their weight." *Id.* at 544. Thus, the court imposed the presumptive sentence for each conviction.
>
> At that point, the court turned its attention to the issue of consecutive sentences, making the following comments and observations:
>
>> Now, here the Court also needs to consider concurrent and consecutive sentencing. And I think, frankly, the facts of this case make that

decision very easy. And that is what I referred to earlier, that the circumstances of your crime were that you shot Kyle Harris. He retreated. And you then shot at Laramie Dudley.

And so not only are those two very separate and distinct acts at separate times, but, also, we have two different victims here. And because of that, I believe that Count I and Count II should be consecutive to each other.

*Id.* at 544-45. We interpret the foregoing comments to constitute the finding of an additional aggravating circumstance, *i.e.*, multiple victims, over and above the ones already identified by the trial court in its previous comments. As the aggravators and mitigators were found to be in equipoise without it, it is an exercise in simple logic to conclude that the aggravating circumstances preponderate with the addition of this factor.

Our Supreme Court has indicated multiple victims is an aggravating circumstance that supports the imposition of consecutive sentences . . . . The multiple-victim aggravator tipped the balance such that the aggravators outweighed the mitigators[] and also justified the imposition of consecutive sentences.

*Id.* at 771 (citation omitted; emphasis in original).

[14] The same sequence of events happened here when the trial court resentenced Dowdell. The court initially identified several aggravators and mitigators, which the court then found to be in equipoise. The court then *separately* found an additional aggravator, the violent nature of the murders, which the court had not yet considered and on which the court relied to impose consecutive

sentences. There is no question that the trial court's reliance on the violent nature of the offenses was a valid "nature and circumstances of the crime" aggravator. *See* Ind. Code § 35-38-1-7.1(a)(2) (1995). As "an exercise in simple logic," it is clear that the additional aggravator "tipped the balance such that the aggravators" in total "outweighed the mitigators[] and also justified the imposition of consecutive sentences." *Id.*

[15] Accordingly, had Dowdell's appellate counsel in *Dowdell II* argued against the imposition of consecutive sentences under *Marcum*, the argument would have failed. In the language of *Strickland*, Dowdell's appellate counsel did not render deficient performance, and her performance caused no prejudice to Dowdell. Thus, we agree with the post-conviction court that Dowdell has not demonstrated that he received ineffective assistance from his appellate counsel. We affirm the post-conviction court's denial of Dowdell's successive petition for post-conviction relief.

[16] Affirmed.

Bailey, J., and May, J., concur.